# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**ERIC N. DRAPER**                                                                                          **PLAINTIFF**

**V.**                                                                          **NO. 4:13-CV-00130-DMB-DAS**

**W.C.R.C.F., ET AL.**                                                                                  **DEFENDANTS**

**CONSOLIDATED WITH**

**ERIC N. DRAPER**                                                                                          **PLAINTIFF**

**V.**                                                                          **NO. 4:13-CV-00133-DMB-DAS**

**MS. PIPPINS, ET AL.**                                                                            **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

In July 2013, Plaintiff Eric N. Draper filed two *pro se* complaints challenging the conditions of his confinement under 42 U.S.C. § 1983. The two cases were consolidated on December 3, 2013. On June 23, 2015, Defendant Mike Whorton moved for summary judgment, which Draper opposed. For the reasons below, Whorton's motion for summary judgment will be granted.

## I
## Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(1) & (a). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the

nonmoving party to carry its burden." *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In making this showing, "the nonmoving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 191–92 (5th Cir. 2011) (internal quotation marks omitted). "If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented." *Bros. v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir. 1994). The facts are reviewed, "resolv[ing] any factual issues of controversy in favor of the non-moving party." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In the absence of proof, a court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

## II
## Procedural History

On July 24, 2013, Draper filed a complaint challenging the conditions of his confinement, alleging denial of medical treatment.[1] *See* No. 4:13-CV-00130 ("*Draper I*") at Doc. #1. On July 26, 2013, Draper filed a second complaint, alleging that he had been assaulted by an officer who used

---

[1] Draper named Warden Pippins, Nurse Kersey, Ollie Chapman, and "Medical Staff/Family Medical Center" as defendants in his first complaint. *See Draper I* at Doc. #1.

excessive force, that he was being denied medical treatment, and that continued threats from the officer made him fear for his safety.[2] *See* No: 4:13-CV-00133 ("*Draper II*") at Doc. #1. In his second complaint, Draper also alleged that he had filed a complaint about the use of excess force, which he claims occurred on May 6, 2013, and discussed the matter with the warden; and that he had been told that he "was going to get hurt if [he] persisted in pursuing" the issue. *Id*. at 6, 3. At the time he filed both complaints, Draper was incarcerated at the Washington County Regional Correctional Facility.

On October 2, 2013, Draper filed a motion for an order of protection in the first case. *Draper I* at Doc. #10. In his motion, Draper alleged that, on September 7, 2013, he was covered with a blanket and beaten by inmates, resulting in the loosening of several of his teeth; that, on September 23, 2015, he was again attacked by inmates, who struck him in the head with a combination lock; and that he had been told he would be killed if he did not drop his suit. Draper did not identify the inmates who allegedly attacked him or who told him he would be killed.

A *Spears* hearing on the first complaint was held October 21, 2013. At the hearing, Draper reiterated his allegations in his complaints and additionally alleged that Defendant Whorton[3] had failed to protect him from the attack of other inmates and retaliated against him. On December 3, 2013, the two cases were consolidated by order of the Court. *Draper I* at Doc. #12. On April 16, 2014, United States Magistrate Judge Jane M. Virden issued a Report and Recommendation ("R&R")

---

[2] In his second complaint, Draper names Warden Pippins, "Mike Worten," Milton Gaston, and Lt. Addison as defendants. *Draper II* at Doc. #1. The record indicates that "Mike Worten" was meant to identify Mike Whorton. *See infra* note 3.

[3] There was some confusion following the *Spears* hearing about the identity of the officer involved in the allegations of retaliation and failure to protect. In his second complaint, Draper identified "Mike Worten" as the officer who had used excessive force against him. The R&R identified the officer involved in the allegations of excessive force, retaliation, and failure to protect as "Mike Harden" and recommended that he be added as a defendant based on the latter two claims. On August 11, 2014, after attempts to serve "Mike Harden" failed, the Court ordered Draper to provide a valid address where he could be located. Draper responded on September 26, 2014, explaining that the individual to be served was Mike Whorton, and providing the Court with his address and work schedule. On October 14, 2014, "Mike Harden" was terminated as a defendant and Mike Whorton added. *Draper I* at Doc. #46.

3

recommending that all claims other than those of failure to protect and retaliation, which involved Whorton, be dismissed. *Id.* at Doc. #25. The R&R was adopted May 13, 2014.[4] *Id.* at Doc. #30.

Whorton filed his answer on December 5, 2014, denying that he had failed to protect Draper from attack by other inmates and denying that he had retaliated against Draper in any manner. *Draper I* at Doc. #56. On June 23, 2015, Whorton moved for summary judgment. *Id.* at Doc. #66. On July 28, 2015, Draper filed his response, and Whorton replied on August 7, 2015. *Id.* at Docs. #74, #75. On October 13, 2015, Draper filed a motion requesting a hearing and appointment of counsel,[5] and on November 23, 2015, filed a motion requesting a response. *Id.* at Docs. #79, #80.

Defendants Gaston and Addison were dismissed by order of the Court on March 7, 2016. *Draper I* at Doc. #82. Whorton is the sole remaining defendant in this case.

### III
### Factual Background

Between July 2013 and July 2014, Draper filed several grievances about his treatment at the Washington Regional Correctional Facility. Three of the grievances involved interactions with Whorton.

In the first grievance about Whorton,[6] Draper claimed that, despite filing a "grievance and complaint about an officer doing bodily harm to [his] person," he had not yet received medical treatment and no disciplinary action had been taken. *Draper I* at Doc. #66-1, at 5. He also claimed that he was "being tormented by the same officer." *Id.*

In the second grievance involving Whorton, dated April 13, 2014, Draper claimed that Whorton harassed him by shining a light in his face, which woke him up; confiscated his razor blade;

---

[4] As a result, Defendants Pippins, Kersey, Chapman, and Family Medical Center were dismissed from the case.

[5] Draper had previously filed several motions to appoint counsel. Each was denied by the Court.

[6] This first grievance is the only undated one. All appear to be Bates stamped according to the order in which they were received. Based on its place in the order of the other forms, Draper's undated grievance was filed sometime between the grievance he filed on August 21, 2013, and the one he filed on April 14, 2014.

and threatened him with disciplinary action. *Draper I* at Doc. #66-1, at 6–7. By affidavit, Whorton testified that he warned Draper that he could be disciplined for possession of the razor blade.[7] *Id.* at Doc. #66-3, at ¶ 8.

In the third grievance against Whorton, filed May 6, 2014, Draper alleged that, since "attempt[ing] to resolve this problem" with Whorton, "he has been coming around me with little threats of taking my personal property."[8] *Id.* at Doc. #66-1, at 8. Whorton denies threatening Draper. *Id.* at Doc. #66-3, at ¶ 9.

Although Draper filed his grievances after filing the second complaint naming Whorton as a defendant, the record indicates they were filed before Whorton was served as a defendant following the *Spears* hearing. *See Draper I* at Docs. #46, #48. Whorton claims that he was unaware Draper had filed a complaint against him until November 21, 2014, when Whorton's counsel informed him that he had received a summons. *Id.* at Doc. #66-3, at ¶ 11.

Whorton, in his affidavit, testified that he was off-duty and not present when Draper alleges the attacks on him by other inmates occurred. *Draper I* at Doc. #66-3, at ¶ 12. Whorton's timecards[9] confirm that he did not clock in or out on those days. *Id.* at Doc. #66-2, at 3–4. According to Whorton, though he was not present at the prison for either of the attacks, he learned of the second attack on Draper upon returning to duty, when he was informed that Draper was housed in medical

---

[7] In his affidavit, Whorton testified that he confiscated the razor blade because of its potential use as a weapon and because of Draper's history of attacking guards. At the time of the confiscation, Whorton was accompanied by another correctional officer, LeAndre Stringler, who also testified by affidavit that Draper had recently attacked a guard with a razor blade.

[8] Draper did not identify the property in question.

[9] Don Davis, the office manager for the facility, testified by affidavit that the timecards were "true and correct copies of Washington County Regional Correctional Facility Officer Mike Whorton's employee timecard reports." *Draper I* at Doc. #66, at 1–2.

5

lockdown.[10] *Id.* at Doc. #66-3, at ¶ 12. Whorton additionally testified that he did not know about the attack Draper alleges occurred on September 7, 2013. *Id.*

# IV
# Analysis

The Prison Litigation Reform Act ("PLRA"), which governs suits by prisoners, states, in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). *See Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("the PLRA's exhaustion requirement applies to all inmate suits about prison life"). The exhaustion requirement is not jurisdictional but, "[a]bsent a valid defense to the exhaustion requirement, the statutory requirement enacted by Congress that administrative remedies be exhausted before the filing of suit should be imposed." *Wendell v. Asher,* 162 F.3d 887, 890–91 (5th Cir. 1998) (emphasis and internal citation omitted). "To hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation." *Id.* at 981 (citation omitted). Consequently, "[d]istrict courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

The PLRA was designed, in part, to "afford[] corrections officials an opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 516–17. Accordingly, "a grievance should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit."

---

[10] Whorton testified that Draper later told him that he was attacked because he had incurred a commissary debt to another inmate, which he couldn't repay.

*Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). However, the Fifth Circuit "has taken a 'strict' approach to § 1997e's exhaustion requirement, under which prisoners must not just substantially comply with the prison's grievance procedures, but instead must 'exhaust available remedies *properly*.'" *Wilson v. Epps*, 776 F.3d 296, 299–300 (5th Cir. 2015) (emphasis in original) (quoting *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010)).

While exhaustion is mandatory under the PLRA, "[f]ailure to exhaust is an affirmative defense … and inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 199 (2007). "When defendants seek to avail themselves of the affirmative defense of failure to exhaust, they bear the burden of showing that administrative remedies were not exhausted." *Abbott v. Babin*, 587 F. App'x 116, 118 (5th Cir. 2014) (citing *Jones*, 549 U.S. at 216). *See Torns v. Mississippi Dep't of Corr.*, 301 F. App'x 386, 389 (5th Cir. 2008) ("Typically, a defensive pleading asserting the affirmative defense of failure to exhaust is required" for court to consider failure to exhaust).

In his motion for summary judgment, Whorton argues that Draper's claims are barred for failure to follow the applicable grievance guidelines. *Draper I* at Doc. #66, at 3. Specifically, Whorton argues that, while Draper submitted grievances involving Whorton in accordance with the facility's procedures, the grievances did not contain allegations of retaliation or failure to protect and thus did not give the facility a fair opportunity to investigate and address the claims. *Id.* at Doc. #67, at 16–17. In support of his motion, Whorton submitted copies of the grievances Draper filed with the facility, along with an affidavit from Daphne Gallion, the inmate services coordinator at the facility, stating that the submitted grievances are "true and correct copies of all grievance forms submitted by Prisoner Eric N. Draper." *Id.* at Doc. #66-1, at 2, 3–13.

In his response, Draper argues that summary judgment should be denied because genuine issues of material fact exist with regard to his claim of retaliation,[11] and submits a variety of documents in support of his argument. *Draper I* at Doc. #74. Whorton, in his reply, argues that the documents Draper provided have no bearing on whether he properly exhausted his remedies before filing suit. *Id.* at Doc. #75, at 2–3.

### A. Grievances

As mentioned above, three of the grievance forms in Draper's record involve Whorton. But, none of the grievances allege that Whorton failed to protect him.

Similarly, the second and third grievances do not contain any allegations that Whorton retaliated against Draper. While the first grievance does allege that Draper was being tormented by the same officer against whom he filed a complaint, a review of the three grievance forms reveals that Draper did not complete, and thus did not exhaust, the grievance process for any of the grievances involving Whorton.

Each inmate grievance form contains two steps. The form provides a space for the inmate to explain the nature of his grievance, after which there is a space to record the response of the grievance officer, labelled "First Step." At the end of the First Step, each grievance form asks whether the inmate is satisfied with the response. The form then asks whether the issue will proceed to the "Second Step," which entails a response from the warden. The two questions are followed by boxes labelled "yes" and "no."

---

[11] Draper additionally argues that genuine questions of material fact exist with regard to his claims of denial of medical care and excessive force. *Draper I* at Doc. #74, at 1-2. However, Draper's claims of denial of medical care and excessive force were dismissed following the *Spears* hearing. *See Draper I* at Docs. #25, #30. Because "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," genuine issues of fact concerning the clams of retaliation and failure to protect, which are not before this Court, will not affect the motion for summary judgment. *Anderson*, 477 U.S. at 248 ("Factual disputes that are irrelevant or unnecessary will not be counted").

8

On each of the grievance forms involving Whorton, the box labelled "yes" is checked after the question asking whether or not Draper was satisfied with the grievance officer's response. *Draper I* at Doc. #66-1, at 5–6, 8. The boxes following the second question and the space provided for the warden's response are blank, indicating that Draper did not pursue the grievances involving Whorton to their conclusions. Draper therefore did not complete the grievance process and thus did not exhaust his administrative remedies as to the claims contained in the three grievance forms involving Whorton.[12] *See Williams v. Castro*, No. CIV. CC-06-437, 2008 WL 447701, at *10–11 (S.D. Tex. Feb. 18, 2008) (failure to exhaust where plaintiff did not complete both steps of two-step formal grievance process).

## B. Other Documents

In support of his response, Draper submitted a variety of documents, including copies of his formal grievances. *Draper I* at Doc. #74, at 6–39. In his reply, Whorton argues that, with the exception of copies of the formal grievances, the documents are inadmissible either because they are irrelevant or unauthenticated. *Id.* at Doc. #75, at 2–3.

Whorton focuses on one document in particular, which "has the appearance of a grievance." Whorton argues that the document does not resemble the other grievances and that Draper does not allege that it was ever properly submitted to the facility. Whorton also argues that, because the document is dated July 16, 2013, the same day Draper signed his second complaint, it has no bearing on whether his remedies were properly exhausted.

---

[12] The Court notes that the second and third grievance forms, dated April 13, 2014, and May 6, 2014, were filed after both of Draper's complaints. While the first grievance involving Whorton is undated, context suggests that it was likely filed after both complaints as well. *See supra* note 6. To the extent the grievances were filed after Draper filed his complaints, Draper did not properly exhaust his administrative remedies under the PLRA. *See Cain v. Texas*, No. 5:10CV32, 2010 WL 2696535, at *2 (E.D. Tex. July 6, 2010) (citing *Wendell*, 162 F.3d at 891) (suit premature and in violation of PLRA requirements when administrative remedies were exhausted after suit filed).

The document in question is a Washington County Regional Correctional Facility form entitled "Complaint." *Draper I* at Doc. #74, at 39. However, a review of the record reveals that, rather than being a separate grievance, the form is the first page of the facts section of Draper's second complaint.[13] *Compare Draper II* at Doc. #1, at 6, *with Draper I* at Doc. #74, at 39. Even if it was intended as a separate grievance, the Complaint form only contains Draper's allegations, in his own handwriting; there is no indication that Draper ever submitted the grievance for review or that anyone from the Washington County Regional Correctional Facility responded to it. Thus, Draper cannot rely on the Complaint form to satisfy the exhaustion requirements of the Prison Litigation Reform Act. *Dillon*, 596 F.3d at 268 (prisoners must "exhaust available remedies properly").

The other documents Draper submitted include various letters and notes. *Draper I* at Doc. #74, at 10–14, 19, 23–28, 30, 36. There is no indication that any of these documents were meant as grievances or were submitted and processed as such. To the extent these documents do not comply with the prison's grievance process, Draper cannot rely upon them to satisfy the Prison Litigation Reform Act's exhaustion requirements. *Flores v. Lappin*, 580 F. App'x 248, 249 (5th Cir. 2014) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules"). Additionally, several of these documents are dated after the filing of the two complaints and thus do not fulfill the Prison Litigation Reform Act's exhaustion requirement. *See Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008) ("prisoner cannot satisfy the exhaustion requirement 'by filing an untimely or otherwise procedurally defective administrative grievance or appeal'"); *see also Burnett v. Robertson*, No. 3:01-CV-1284-P, 2001 WL 1577495, at *2 (N.D. Tex. Dec. 7, 2001).

---

[13] Earlier in the same document, Draper specifically identifies that page as the beginning of the facts section of his complaint. *Draper II* at Doc. #1, at 4.

Draper has not exhausted his administrative remedies as to his remaining claims against Whorton for retaliation and failure to protect. As such, summary judgment will be granted.[14]

# V
# Conclusion

For the reasons above, the motion for summary judgment [66] is **GRANTED**. Draper's claims against Whorton will be dismissed for failure to exhaust administrative remedies. Accordingly, Draper's pending motion for a hearing [79] and motion for a response [80] are **DENIED as moot.** A final judgment consistent with this ruling will follow.

**SO ORDERED**, this 21st day of March, 2016.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[14] Whorton also argues that he is also entitled to qualified immunity on Draper's failure to protect claim and that Draper has not stated a claim for retaliation against Whorton. Because the Court has already determined that summary judgment should be granted on the grounds of failure to exhaust, the Court does not address Whorton's additional arguments. *See In re Manson Const. Co.*, No. CIV.A. 11-3041, 2013 WL 2181284, at *1 (E.D. La. May 20, 2013) ("As the Court's summary judgment ruling is dispositive, the Court declines to consider all other arguments" in defendants' motion, where defendants' motion was granted); *Ayala v. Sibille*, No. CIV. A. H-09-535, 2010 WL 1576688, at *4 (S.D. Tex. Apr. 20, 2010) ("[Defendant] raised other arguments and defenses in his motion, however, they need not be addressed as the court grants summary judgment on all claims against [defendant].").